AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 24-8149-BER |
| THOMAS EDWARD SCHMIDT, III, | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __02/18/2024 and 03/16/2024__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of Firearms and Ammunition by a Convicted Felon; |
| 26 U.S.C. § 5861(e) | Transfer of an Unregistered Silencer; and |
| 26 U.S.C. § 5861(i) | Possession of a Silencer Not Identified by a Serial Number in violation of law |

This criminal complaint is based on these facts:

See attached Affidavit

FILED BY ___TM___ D.C.
Mar 28, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Kevin Drummond, Task Force Officer, ATF
*Printed name and title*

Subscribed and sworn to before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (Facetime).

Date: 03/27/2024

Bruce E. Reinhart
Digitally signed by Bruce E. Reinhart
Date: 2024.03.28 05:37:13 -04'00'

_____
*Judge's signature*

City and state: West Palm Beach, Florida

Bruce Reinhart, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**A CRIMINAL COMPLAINT**
Case No. 24-8149-BER

Your affiant, Kevin W. Drummond, being first duly sworn, does hereby depose and state as follows:

**INTRODUCTION**

1. Your affiant, Kevin W. Drummond, is a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and has served in that capacity since November 2017. Your affiant is also a duly sworn Deputy Sheriff in and for Palm Beach County, Florida. In total, your affiant has approximately 20 years of law enforcement experience. As a Task Force Officer with ATF, your affiant's duties and responsibilities include conducting criminal investigations of individuals that have violated federal laws, particularly laws contained in Titles 18, 21, and 26 of the United States Code (U.S.C.). During your affiant's tenure with ATF and PBSO, I have previously participated in investigations which resulted in the arrests, searches, and seizures of individuals and property. In the course of my career with PBSO and ATF, I have participated in the use of cooperating informants, undercover agents pen register/trap and trace devices, video surveillance, wiretaps, GPS tracking devices, search warrants, and audio surveillance, among other law enforcement techniques. Your affiant has participated in over thirty (30) prior investigations related to the illegal sale and/or purchase of items related to the National Firearms Act (NFA), codified under Title 26, United States Code, Section 5801, *et seq.*, to include silencers, short-barreled rifles and shotguns, destructive devices, and fully automatic machine guns. Additionally, your affiant has interviewed or debriefed over thirty (30) individuals related to NFA violations concerning the methods and practices utilized by these individuals. Based on

my training and experience, I am familiar with methods used by the criminal element to further a variety of criminal activities, to include violations arising under the NFA.

2.  Your affiant submits this affidavit in support of a criminal complaint charging **Thomas Edward SCHMIDT III,** with the following violations of federal law: Possession of an Unregistered Silencer, in violation of 26 U.S.C. § 5861(d); Transfer of an Unregistered Silencer, in violation of 26 U.S.C. § 5861(e); and Possession of a Silencer Not Identified by a Serial Number in violation of law, in violation of 26 U.S.C. § 5861(i). These violations occurred in Palm Beach County and the Southern District of Florida.

3.  On the basis of my training and experience, your affiant is aware that:

    a.  Pursuant to Title 26, United States Code, Section 5845(a)(7), a firearm silencer (hereinafter "silencer") is considered a "firearm" under the NFA, and is subject to licensing and registration under federal law in order to be lawfully manufactured, possessed or transferred. Title 18, United States Code, Section 924(a)(25) defines a "firearms silencer and firearm muffler" as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." federal law prohibits the manufacture of silencers unless the manufacturer holds a Class 2 Special Occupational Taxpayer License (SOT), which grants the authority to manufacture NFA items, including silencers, subject to ATF oversight. I am further aware that it is unlawful to possess or transfer a silencer unless a person holds Class 2 or 3 SOT, and (as to the possession) the silencer is registered in the National Firearms Registration and Transfer Record (NFRTR).

2

    b.  It is similarly unlawful to possess or transfer unregistered silencers pursuant to Title 26, United States Code, Sections 5861(d) and 5861(e), respectively. It is similarly unlawful under Title 26, United States Code, Section 5861(i) to receive or possess a silencer which is not identified by a serial number as required under the NFA, or to transport a silencer in interstate commerce under Section 5861(j).

    c.  That it is possible for a non-prohibited person to legally make a silencer legally under federal law in the State of Florida, by filing out and submitting an ATF Form 1 (Application to Make and Register an NFA Firearm), together with the requisite tax payment (typically $200), and for an individual, their fingerprints, photograph, and proof of notification of the Chief Law Enforcement Officer for the jurisdiction in which they reside, for approval by ATF. The application would include maker's identification and a/the serial number for the NFA firearm to be made. Following a background review by ATF, the non-prohibited person would receive the registration notification for the specific serial number identified NFA firearm to be made, tax stamp, and ATF authorization to make the NFA firearm, such as a silencer.

  4.  The facts contained in this Affidavit are based on information elicited from my own investigation, and information and evidence relayed to me by other law enforcement officers with personal knowledge of the events described herein. Because this affidavit is submitted for the limited purpose of obtaining a criminal complaint, it does not contain all the facts known to me about the investigation, but rather, those facts that I submit establish probable cause of the defendant's commission of the offense(s) listed herein.

## PROBABLE CAUSE

  5.  On February 18, 2024, while working in an undercover capacity, your affiant was advised of an individual that was selling illegal silencers at the West Palm Beach Gun Show, being

held at the South Florida Fairgrounds, located at 9607 Southern Boulevard, West Palm Beach, Florida, Palm Beach County, Southern District of Florida.

6. Your affiant subsequently approached the table this individual had setup inside of the gun show that same date (February 18, 2024), who was later identified as Thomas Edward SCHMIDT III. Upon approaching the table, your affiant observed a sign in neon pink sitting on the table. The sign read, on the first line, "**I DO NOT SELL**"; second line, "GUN SILENCERS"; third line, "I Only Sell Inline Filters"; next paragraph, "They Are Military Grade, they are made and designed to be fuel filters. I'm selling you a Filter and you agree that you're only buying a filter. They may also be used for solvent traps for cleaning your gun. All custom threaded barrels or barrel threading done by me are for muzzle use and or other legal accessories." At the bottom of the sign there was a list of payment options.

7. Your affiant further observed sitting on the table several pieces and parts that your affiant based on his training, experience, and knowledge are consistent with being parts utilized to make a silencer. Including a long cylindrical hollow tube with a threaded end (Used to thread onto the end of a firearm barrel), internal metal parts called baffles, and an open end for the projectile (bullet) to exit. When these parts are all placed together it causes a suppression of the sound of the firearm.

8. Your affiant knows based on my training, experience, and knowledge that a silencer works based on the following: The loud report alerting one to the discharge of a firearm is caused by the violent release of hot propellent gases. This phenomenon is similar to the loud noise which accompanies a balloon being popped, wherein all the gas or air inside the balloon is suddenly and simultaneously released. However, if the gasses inside the same balloon are slowly released or vented, they produce a significantly reduced sound signature. A silencer or firearms muffler works

much the same way, in that it commonly uses a cylinder or tube of sufficient tensile strength to contain a significant portion of the gas escaping from the explosive discharge of a cartridge, and contains internal sound baffles. The discharge end of the silencer tube is commonly equipped with an end cap, which is either threaded or welded to the end of the tube, with a hole in the center only slightly larger than the projectiles being fired, to permit the bullet to exit normally while slowing or stopping propellent gasses. When the firearm is fired and the silencer is attached to the end of the barrel of the firearm, the bullet passes through the bore. When the bullet passes through the bore expanding gases behind the bullet are redirected by the baffles. The baffles cause the gas to have a longer and more convoluted escape path and prolongs the release time and cooling of the gases. This process slows down the gas and dissipates its kinetic energy into a larger surface area, thereby reducing the blast intensity and muffling ("silencing") the sound. Your affiant further knows that although legally called a "silencer," these devices do not generally totally eliminate the sound accompanying a firearm discharge so much that it is silent, but rather muffles or suppresses the discharge such that the report is significantly less audible over as great a distance.

9. With all of this information, your affiant acting in an undercover capacity made contact with SCHMIDT III and began to speak to SCHMIDT III in reference to how exactly the item he was selling worked. SCHMIDT III advised this was not a suppressor/silencer but was a cleaning apparatus for your firearm. SCHMIDT III advised you place the black tube on the end of your firearm by threading it on there and then when you are cleaning your firearm, the oil will run down the barrel and be caught by the end cap. Thereby, keeping the oil from dropping to the floor. SCHMIDT III did say however if you drill a hole in the end cap then ATF could consider this to be a suppressor because if you were to shoot through this tube with your firearm, it would

in fact suppress the sound. SCHMIDT III did say if you did not want to drill a hole in the end cap, then he sells an adapter that is again threaded that would already have the hole in it.

10. SCHMIDT III additionally advised if you were going to fill out a Form 1 to make this device into a silencer, to make sure when you fill out the Form 1 you say on it you have not purchased any parts to make the silencer yet. SCHMIDT III said then when the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) asks for a picture to get a photo of a block of aluminum from an online photo and send ATF that, but to not send the pictures of the items SCHMIDT III is selling. SCHMIDT III also advised there is no paperwork and no paper trail related to the purchase from him.

11. All of these parts were being sold by SCHMIDT III and the pricing was as follows: Black tube with internal baffle parts and threaded adapter for threaded barrel (6 inch)- 275 dollars. The connector for the end cap with the hole in it- 35 dollars. Your affiant knows from his training and experience these components when put together do in fact make a silencer. Your affiant further knows that ATF requires a Tax Stamp for anyone who owns an NFA Firearm to include silencers. Additionally, the seller of NFA Firearms to include silencers needs to be a Type 01 – Dealer in Firearms, Federal Firearms Licensee (FFL) with a Class 3 Special Occupational Taxpayers (SOT) status to further deal in NFA Firearms to include silencers. Your affiant researched to ascertain if SCHMIDT III has a tax stamp for any NFA items and learned SCHMIDT III does not have a tax stamp. Additionally, a records check was conducted on SCHMIDT III and you affiant learned SCHMIDT III does not have a license to deal in firearms generally, or a license to deal in NFA firearms to include silencers, specifically. Accordingly, SCHMIDT III does not have Class 2 or 3 SOT status and cannot deal in any NFA firearms to include silencers.

12. After this conversation with SCHMIDT III, your affiant walked away from the table and made contact with Detective Garten and Detective Cabrera of the Palm Beach County Sheriff's Office Gang Unit, who were also working in an undercover capacity. Your affiant directed Detective Garten and Detective Cabrera to go make conversation with SCHMIDT III. Detective Garten and Detective Cabrera did so and recorded this interaction utilizing an audio recording device.

13. During the conversation between Detective Garten, Detective Cabrera, and SCHMIDT III, SCHMIDT III advised Detective Garten and Detective Cabrera of the following (The following is a brief synopsis of their recorded exchange and is not verbatim):

    a. SCHMIDT III advised to be compliant with the ATF he doesn't sell silencers/suppressors, he sells gun cleaning apparatuses. SCHMIDT III said the devices he sells attach to the end of your barrel and catch your oil when you are cleaning your gun. SCHMIDT III claimed that that's what makes it legal so you don't have to have paperwork to buy this. SCHMIDT III advised Detective Garten and Detective Cabrera that if you drill a hole in it then ATF may consider it to be a suppressor, because if you shoot through it, it sounds like a suppressor. SCHMIDT III explained his devices probably reduces the sound by like eighty (80) or ninety (90) percent. SCHMIDT III says that's what makes it legal so I can sell it without any paperwork. SCHMIDT III explained to Detective Garten and Detective Cabrera how to put the parts together at this time. During that explanation, SCHMIDT III again stated that if you drill a hole through it, it may be considered a suppressor. SCHMIDT III then advises if you don't want to drill the hole, you can screw this piece on and then you don't have to drill the hole (Your affiant knows SCHMIDT III is referring to the adaptor he sells that screws on the end of the cylinder tube that already has a hole in it). SCHMIDT III again says if you shoot through this it sounds like a

suppressor. SCHMIDT III states several times throughout the conversation that the intent is to clean your gun with this item.

          b.       Your affiant knows it is common for individuals selling these illegal items with these parts, to use this purported explanation in an attempt to disclaim legal liability for what they otherwise know to be a device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler.

    14.     While Detective Garten and Detective Cabrera were still talking to SCHMIDT III your affiant walked up to the table an in an undercover capacity and advised SCHMIDT III that I would like to buy one of the six (6) inch version. Your affiant provided three hundred twenty ($320) dollars in US Currency of Investigative Funds (IF) to SCHMIDT III and SCHMIDT III provided your affiant with the product. This interaction was audio/video recorded. SCHMIDT III provided your affiant with 10 dollars in change. The total purchase amount was three hundred ten dollars ($310). Det. Cabrera and Det. Garten were present during this transaction and conducted the audio/video recording. SCHMIDT III advised your affiant again that if I were going to fill out a Form 1 to make sure I send a picture of a block of aluminum to ATF. SCHMIDT III further states that if I were to do that, I would have to pay a two hundred (200) dollar tax stamp and [incorrectly advised] would give ATF the right to come into my home at any time. It should be noted that during this transaction SCHMIDT III did not provide your affiant with the blue rubber hose SCHMIDT III had spoken so much about in reference to using the device for supposedly cleaning your gun. Your affiant reminded SCHMIDT III about the blue hose. It should further be noted that none of the parts purchased from SCHMIDT III bore any serial numbers as required under federal law.

15. After purchasing the silencer from SCHMIDT III, your affiant relocated to his vehicle and placed the silencer into a brown evidence bag. The silencer was placed into evidence at the Palm Beach County Sheriff's Office evidence building. Prior to the silencer being placed into evidence, Detective Stephen Barborini of the Palm Beach County Sheriff's Office examined the silencer parts. It should be noted Detective Barborini has testified over a hundred times as an expert in firearms identification in Federal and State Courts both as an ATF Special Agent and as a PBSO Detective for over 25 years to include identifying firearms in videos and still photos. After examining the parts purchased from SCHMIDT III, Detective Barborini advised the silencer parts your affiant purchased are consistent with being a real and actual silencer under Federal law.

16. On March 15, 2024, your affiant was advised SCHMIDT III had checked into the West Palm Beach Gun Show and had begun to setup his table.

17. On March 16, 2024, agents and detectives acting in an undercover capacity conducted an additional purchase of an illegal, unregistered silencer from SCHMIDT III. This transaction was audio and video recorded. During the conversation and the eventual purchase SCHMIDT III related the same cover story SCHMIDT III had provided to your affiant in the previous undercover purchase. SCHMIDT III started off saying to be compliant with the ATF he does not sell silencers or suppressors, but rather only sells gun cleaning apparatuses. SCHMIDT III further states that's what makes them legal so you can buy them without doing any paperwork. SCHMIDT III goes on to say the intent of them is to clean your gun. SCHMIDT III again explains if you put the end cap on it and if you were to drill the hole, then ATF may consider that a silencer. SCHMIDT III tells the undercover agent however, if you don't want to drill the hole you place this attachment on there (SCHMIDT III is referencing the threaded attachment that already has the hole drilled that comes with the kit) and voila you don't have to drill the hole. Later in the

conversation SCHMIDT III tells the undercover agent if you shoot your gun through it, it does act like a suppressor. SCHMIDT III even states that it will probably suppress the sound by eighty (80) or ninety (90) percent. SCHMIDT III states several times that the intent is to clean your gun.

18. During this undercover purchase, SCHMIDT III shows the undercover agent a video of an individual shooting a firearm with a silencer on it. The undercover agent asks SCHMIDT III if that is the one he has and SCHMIDT III says that is the 6 inch and the 10 inch version he sells suppresses it even more. SCHMIDT III goes into detail about the intent of the item he is selling. He states the intent is to clean your gun and even if you have it on the end of your gun and you shoot it, then you would just say oops and the intent is to clean your gun. The total price for the kit was Three Hundred Thirty ($330) dollars.

19. Your affiant knows based on his training, experience, and knowledge these parts when combined together are designed to function as a silencer. The baffles are designed and intended to partition the larger expansion chamber of the device, thereby creating multiple smaller expansion chambers. An end cap with a preexisting exit hole was also purchased from SCHMIDT III for an additional price.

20. Your affiant further knows based on his training, experience, and knowledge the silencers and parts that are the subject of this investigation are marketed on the Internet as "solvent traps," "solvent trap accessories," or "dry storage container," among other names. Such deceptive advertisements sometimes include an "NFA Warning" or a legal disclaimer regarding the use or modification of these devices as, or in the fabrication of, firearm silencers. Your affiant submits that the inclusion of these disclaimers or statements (similar to the sign posted at SCHMIDT III's table) as well as customer comments and reviews, suggests the seller's knowledge of the actual and intended use of the items.

21. Based off of your affiant's examination of these parts, these parts are a combination of parts designed and intended for use in assembling or fabricating a firearm silencer; therefore, it is a "firearm silencer" as defined in 18 U.S.C. § 921(a)(3)(C). Further, being a combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer, it is a "firearm silencer" as defined in 18 U.S.C. § 921(a)(24); therefore, it is also a "firearm silencer" as defined in 26 U.S.C. § 5845(a)(7). Finally, the silencer bears no manufacturer's marks of identification or a serial number as required by 26 U.S.C. §§ 5842 and 5861(i).

22. Your affiant also contacted John Hawes from the ATF Firearms and Technology Division (FATD) and sent photos of the silencer. Hawes reviewed the photos and advised, "The provided photographs are of a "firearm silencer," commonly marketed as a solvent trap or filter. The blue plastic tubing is commonly included to give the appearance of having a different legitimate use other than as a silencer but it serves no functional purpose and has no means of attachment to the device. It has common firearm silencer features such as a monolithic baffle core that creates several expansion chambers, outer tube, and end-cap. FATD has classified numerous similar devices as "firearm silencers."

23. Your affiant previously drafted and had an approved warrant to install an Electronic Tracking Device (ETD) on the Ford F-150 on March 16, 2024. The ETD was installed on the F-150 on March 16, 2024 at approximately 4:15 PM. After SCHMIDT III left the area of the gun show in West Palm Beach, Florida on March 17, 2024, your affiant monitored the movements of the F-150 electronically. Eventually, the F-150 and the Recreational Vehicle (RV) of SCHMIDT III's was electronically observed in the Newport News, Virginia area in the Eastern District of Virginia.

24. On March 23, 2024, your affiant obtained approved warrants for the F-150 and SCHMIDT III's RV. These warrants were obtained in the Eastern District of Virginia. With the assistance of SA Woloszynowski and agents from the ATF Newport News Virginia field office, these warrants were executed on March 23, 2024. During the execution of these warrants SA Woloszynowski advised they recovered and seized an additional thirty-six (36) illegal silencers. This information further establishes SCHMIDT III was in fact transporting the illegal silencers across State lines, thereby effecting interstate commerce.

## CONCLUSION

25. WHEREFORE, on the basis of the facts and circumstances set forth above, your affiant respectfully submits probable cause exists to charge **Thomas Edward SCHMIDT III,** with the following violations of federal law: Possession of an Unregistered Silencer, in violation of 26 U.S.C. § 5861(d); Transfer of an Unregistered Silencer, in violation of 26 U.S.C. § 5861(e); and Possession of a Silencer Not Identified by a Serial Number in violation of law, in violation of

26 U.S.C. § 5861(i). These violations occurred in Palm Beach County and the Southern District of Florida.

        FURTHER YOUR AFFIANT SAITH NAUGHT

_____
Kevin W. Drummond
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms & Explosives

ATTESTED TO ME TELEPHONICALLY
(VIA FACETIME) BY THE APPLICANT
IN ACCORDANCE WITH THE REQUIREMENTS
OF FED. R. CRIM. P. 4.1 THIS 27TH
DAY OF MARCH, 2024.

Bruce E. Reinhart
Digitally signed by Bruce E. Reinhart
Date: 2024.03.28 05:39:29 -04'00'

_____
**BRUCE REINHART**
**UNITED STATES MAGISTRATE JUDGE**